# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HERBERT C. RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09cv1695 TCM |
| ) | |
| SHOP 'N SAVE WAREHOUSE ) | |
| FOODS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the motion of defendant, Shop 'N Save Warehouse Foods, Inc., to dismiss the pro se employment discrimination complaint of plaintiff, Herbert C. Russell, alleging violations of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) to 2000e(17); the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634; and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101-1213. [Doc. 15] Plaintiff has not responded to Defendant's motion, nor has he requested an extension of time within which to respond.

## Background

The relevant allegations in Plaintiff's complaint are assumed to be true and are as follows.

Plaintiff is a courtesy clerk at one of Defendant's stores, is an African-American, and is at least fifty years old. (Compl. at 3.) He is the only African-American, full-time courtesy

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

clerk in his age group. (Id. at 13-14.) His primary job assignments are to retrieve shopping carts, clean, and assist in bagging. (Id. at 3.) Prior to July 1, 2008, Plaintiff worked from 5:45 a.m. to 2:15 p.m. (Id.) This shift allowed Plaintiff to complete his assignments effectively. (Id.) On July 11th, his schedule was changed to the 7:00 a.m. to 3:30 p.m. shift. (Id.)

Because Plaintiff was the only full-time courtesy clerk on the first shift, he was singled out. (Id.) No other full-time clerk had his or her schedule changed. (Id.) Other full-time clerks assigned to the first shift have remained on that shift. (Id.) Because of the shift change, Plaintiff is unable to maintain his former level of job performance. (Id.) For instance, the retrieval of shopping carts makes it more difficult for him to attend to his other job assignments. (Id.) Other than a vague reference to "'economic conditions,'" Plaintiff has never been given an explanation for the shift change. (Id. at 15.)

Plaintiff threatened to resign and was advised by the store director to try the new schedule through the end of the next week and then decide. (Id. at 3.) The director did not wait until that deadline, however, and told Plaintiff the following Monday that he would need Plaintiff's decision by the end of the next day. (Id.) Part-time courtesy clerks are not similarly situated to Plaintiff; however, full-time clerks share similar job responsibilities, work hours, full-time status, seniority, and benefits. (Id.) Plaintiff's unique position requires a full-time courtesy clerk. (Id.)

Plaintiff alleges that he has been subjected to a hostile work environment and race discrimination and that the schedule change has made his job "extremely physically demanding." (Id.) On September 12, 2008, he was counseled by the store director that he

must complete his assignments in an orderly fashion. (Id. at 12.) This director acknowledged that there were no such problems prior to the schedule change. (Id.) Because of the schedule change, Plaintiff has been placed at a significant disadvantage in performing his job assignments effectively. (Id.) He fears that, because the shift change is making his job more difficult, it was done to cause him to resign or to create a reason to fire him. (Id. at 15.)

Plaintiff filed a charge of discrimination jointly with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC") based on the shift change. (Compl. Ex. 1 at 3.) He marked the boxes for race, retaliation, and age for the basis of the discrimination. (Id.) On August 14, 2009, he filed another charge simply alleging that he was being subjected to a hostile work environment and denied an employee handbook in retaliation for having filed previous charges and because he is regarded as being disabled. (Id. at 5.)

Plaintiff requests monetary relief and an order directing Defendant to provide training for their employees on job discrimination and to provide each employee a handbook "involving rules and regulations of the business." (Compl. at 17.)

Defendant moves to dismiss the complaint on the grounds that the ADA claim was not timely filed with the EEOC, that Plaintiff has failed to establish a prima facie case of discrimination, and that he has failed to allege an adverse employment action. As noted above, although more than two months have passed since Plaintiff's response was due, none has been filed.

Because Defendant's third argument is dispositive of all of Plaintiff's claims, it will be the first addressed.

### Discussion

Motion to Dismiss Standard. "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do.'" **Benton v. Merrill Lynch & Co.**, 524 F.3d 866, 870 (8th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Ashcroft v. Iqbal**, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Id.** (citing Twombly, 550 U.S. at 556). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." **Id.** "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" **Id.** (quoting Twombly, 550 U.S. at 557). This standard reflects "two working principles." **Id.** "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." **Id.** "Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss." **Id.** at 1950. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." **Id.**

When applying this standard, the Court generally assumes to be true the factual allegations in the complaint and construes those allegations in favor of the plaintiff. **Data Mfg., Inc. v. United Parcel Serv., Inc.**, 557 F.3d 849, 851 (8th Cir. 2009). The Court is not, however "'precluded in [its] review of the complaint from taking notice of items in the public record.'" **Levy v. Ohl**, 477 F.3d 988, 991 (8th Cir. 2007) (quoting Papasan v. Allain, 478 U.S. 265, 269 n.1 (1986)) (alteration in original), or of materials that are "necessarily embraced by the pleadings," **Noble Sys. Corp. v. Alorica Central , LLC**, 543 F.3d 978, 982 (8th Cir. 2008) (internal quotations omitted). Exhibits attached to the complaint are part of the complaint for purposes of Rule 12(b)(6). **Quinn v. Ocwen Federal Bank FSB**, 470 F.3d 1240, 1244 (8th Cir. 2006); **Bradford v. Huckabee**, 394 F.3d 1012, 1015 (8th Cir. 2005). Consequently, the EEOC documents attached by Plaintiff to his complaint will be considered when ruling on the pending motion.

Adverse Employment Action. The elements of a prima facie case of discrimination are "'1) the employee belonged to a protected class; 2) [ ]he was qualified to perform h[is] job; 3) [ ]he suffered an adverse employment action; and 4) [ ]he was treated differently from similarly situated [employees who did not belong to the protected class].'" **Hawks v. J.P. Morgan Chase Bank**, 591 F.3d 1043, 1049 (8th Cir. 2010) (quoting Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005)) (all but last alterations in original); accord **Jones v. Reliant Energy-ARKLA**, 336 F.3d 689, 691 (8th Cir. 2003). This structure governs claims of

discrimination and retaliation under Title VII and § 1981, see **Takele v. Mayo Clinic**, 576 F.3d 834, 838 (8th Cir. 2009); the ADEA, see **Bearden v. Int'l Paper Co.**, 529 F.3d 828, 832 (8th Cir. 2008); and the ADA, see **Stewart v. Indep. School Dist. No. 196**, 481 F.3d 1034, 1043 (8th Cir. 2007). At issue is whether Plaintiff has alleged an adverse employment action.

"'A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status – a reduction in title, salary or benefits.'" **Box v. Principi**, 442 F.3d 692, 696 (8th Cir. 2006) (quoting Wenzel v. Missouri-American Water Co., 404 F.3d 1038, 1042 (8th Cir. 2005)). "Although actions short of termination may constitute adverse employment actions . . . 'not everything that makes an employee unhappy is an actionable adverse action.'" **Hughes v. Stottlemyre**, 454 F.3d 791, 797 (8th Cir. 2006) (quoting Montandon v. Farmland Indus., Inc., 116 F.3d 355, 59 (8th Cir. 1997)). "[C]hanges in duties or working conditions that cause no materially significant disadvantage" do not establish a prima facie case. **Id.** (internal quotations omitted) (finding that schedule changes were not adverse employment actions). Thus, "a transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action," **Ledergerber v. Stangler**, 122 F.3d 1142, 1144 (8th Cir. 1997), nor will transferring an employee to a different office within commuting distance, **Jones**, 336 F.3d at 692, or refusing to transfer an employee, **LePique v. Hove**, 217 F.3d 1012, 1013-14 (8th Cir. 2000), or transferring an employee to a different shift without any accompanying *significant* change in working

conditions, **Shockency v. Ramsey County**, 493 F.3d 941, 948 (8th Cir. 2007). "[O]therwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit." **Ledergerber**, 122 F.3d at 1144 (internal quotations omitted). If, however, "the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits" there may be an adverse employment action. **Fisher v. Pharmacia & Upjohn**, 225 F.3d 915, 920 (8th Cir. 2000).

The adverse employment action that is the genesis for Plaintiff's discrimination complaint is the change in his work schedule from a 5:45 a.m. to 2:15 p.m. shift to a 7:00 a.m. to 3:30 p.m. shift. This shift change, Plaintiff alleges, has made it more difficult for him to complete his job duties and has resulted in the store director counseling him about his job performance. Although Plaintiff's 75-minute shift change allegedly resulted in a more stressful work environment, there is no allegation that it resulted in any reduction in pay or benefits. See **Harlston v. McDonnell Douglas Corp.**, 37 F.3d 379, 382 (8th Cir. 1994) (finding that reassignment to different secretarial position, while more stressful, was not adverse employment action). Indeed, Plaintiff has not responded to Defendant's argument that he did not suffer an adverse employment action with any allegation of a change that has caused him any significant disadvantage.[2] His duties have not increased; rather he is busier

---

[2]The Court notes that Plaintiff is not requesting a return to his previous shift in his prayer for relief. Instead, he seeks an order requiring Defendant to provide training to alleviate job discrimination and to issue an employee handbook.

because the change in shift coincides with the store's busier times and because the night shift employees fail to efficiently perform their job duties.[3]

Having failed to allege that he suffered an adverse employment action, Plaintiff has failed to state a claim of discrimination under § 1981, Title VII, ADEA, and the ADA.

Plaintiff's ADA Claim. "Under the ADA, an employee must file a charge of discrimination – including failure to accommodate – within 300 days[4] of the alleged discrimination." **Henderson v. Ford Motor Co.**, 403 F.3d 1026, 1032 (8th Cir. 2005) (citing 42 U.S.C. § 12117(a) (mandating that the 300-days statute of limitations in 42 U.S.C. § 2000e-5(e) applies to ADA claims)). The timely filing of a charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing a suit in federal court, but rather "is a condition precedent and, 'like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" **Dorsey v. Pinnacle Automation Co.**, 278 F.3d 830, 835 (8th Cir. 2002) (quoting Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982)). Plaintiff does not argue that the doctrines of waiver, estoppel, or equitable tolling apply. The question then is whether the August 14, 2009, ADA charge of discrimination was filed within 300 days of the action at issue.[5]

---

[3]Plaintiff alleges in his complaint that he has addressed this issue with management and management has agreed with Plaintiff that the earlier shift should complete its tasks properly.

[4]The 300 day period applies, as opposed to a 180-day period, because Plaintiff's charges were initially filed with a state agency, the Missouri Commission on Human Rights. See 42 U.S.C. § 2000e-5(e)(1).

[5]The ADA charge of discrimination does not refer to any specific action and includes only a general allegation of a hostile work environment and no employee handbook. It lists June 12, 2009, as the date discrimination took place, but does not identify any act that took place on that date. This charge was attached by Plaintiff as an exhibit to his complaint and the complaint focuses entirely on

According to the complaint, the latest date an action occurred affecting Plaintiff's employment was on September 18, 2008, when the store director improperly counseled him. Three hundred days from that date is July 15, 2009. Plaintiff filed his charge on August 14, 2009 – 30 days too late. The result of an untimely filing of a charge of discrimination is a loss of that cause of action. **Hutson v. Wells Dairy, Inc.**, 578 F.3d 823, 826 (8th Cir. 2009). See also **Stewart v. Domtar Indus. Inc.**, 228 Fed.Appx. 626, 627 (8th Cir. 2007) (per curiam) (filing an ADA charge of discrimination out of time resulted in dismissal of the cause of action).

The charge of discrimination that was timely filed did not include disability as a basis for the alleged discriminatory acts. "To determine whether an allegedly discriminatory action falls within the scope of a claim, 'the administrative complaint must be construed liberally.'" **Simmons v. New Public School Dist. No. Eight**, 251 F.3d 1210, 1216 (8th Cir. 2001) (quoting Stuart v. General Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000)). "This liberal-construction rule stems from the rather fundamental policy that mere vagueness in a *pro se* claim should not sound the death knell for the plaintiff's discrimination allegation." **Shannon v. Ford Motor Co.**, 72 F.3d 678, 685 (8th Cir. 1996) (internal quotations omitted). "But, there is a difference between liberally reading a claim which lacks specificity and inventing, *ex nihilo*, a claim which simply was not made." **Id.** (internal citations and quotations omitted). Plaintiff is not unfamiliar with the administrative process for filing

---

the shift change. Liberally construing the complaint as the Court must, see **Normal v. Schuetzle**, 585 F.3d 1097, 1117 (8th Cir. 2009), the Court will therefore consider the charge as a claim about the shift change.

charges of discrimination.[6] Indeed, the charge he timely filed alleged discrimination on the basis of race, retaliation, and age. Construing this charge as including a claim of discrimination based on disability would be to invent a claim not made. Consequently, had he alleged an adverse employment action – which he did not – his ADA claim would nonetheless be dismissed as untimely.

Similarly-Situated Employees. Plaintiff alleges that he is the only full-time African-American courtesy clerk over the age of 50 years. Indeed, he is the only full-time courtesy clerk. He further alleges that part-time courtesy clerks are not similarly situated to a full-time courtesy clerk and that full-time clerks share similar job responsibilities, work hours, full-time status, seniority, and benefits. He was the only full-time clerk whose schedule was changed. Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because he cannot prove that similarly-situated employees were treated more favorably than he.

"The required prima facie showing is a 'flexible evidentiary standard' that was 'never intended to be rigid, mechanized, or ritualistic.'" **Lewis v. Heartland Inns of Am., LLC**, 591 F.3d 1033, 1039 (8th Cir. 2010) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506,

---

[6]In support of its motion to dismiss, Defendant submits an exhibit, C, listing nineteen charges of discrimination filed by Plaintiff with the EEOC. Eight of these charges were against Defendant. See **Levy**, 477 F.3d at 991 (court may take notice of items in public record when ruling on Rule 12(b)(6) motion). Moreover, this is the fourth employment discrimination complaint filed by Plaintiff against Defendant. See e.g., Russell v. Shop 'N Save, 4:01cv0269 TCM (E.D. Mo. 2002); Russell v. Shop 'N Save, 4:96cv1611 TCM (E.D. Mo. 1997); Russell v. Shop and Save, 4:92cv1564 SNL (E.D. Mo. 1992). Although Plaintiff's litigation history is irrelevant to the merits of his pending complaint, it is relevant to his degree of sophistication in filing a charge of discrimination.

512 (2002)). "Courts consistently emphasize[ ] that the ultimate issue is the reasons for the individual plaintiff's treatment, not the relative treatment of different groups within the workplace." **Id.** (internal quotations omitted) (alteration in original). Plaintiff alleges the reason for the shift change was his race and age. The question of similarly-situated employees might be relevant when a developed record is before the Court, e.g., on a summary judgment motion, but will not be addressed in the context of this motion to dismiss.

### Conclusion

Liberally construed, Plaintiff's employment discrimination complaint fails to allege he suffered an adverse employment action. Because of this omission,

**IT IS HEREBY ORDERED** that the motion to dismiss of Shop 'N Save Warehouse Foods, Inc., is **GRANTED**. [Doc. 15

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  13th  day of April, 2010.